UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOSE VILLANUEVA, | | Case No. 2:24-cv-00125-ART-DJA |
| | Plaintiff, | ORDER |
| v. | | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*, | | |
| | Defendants. | |

Plaintiff Jose Villanueva sued Defendants Francis Soriano and the Las Vegas Metropolitan Police Department ("LVMPD"), for violations of state and federal law that occurred while he was detained at Clark County Detention Center ("CCDC"). (ECF No. 31.) Before the Court is Defendants' motion to dismiss Mr. Villanueva's First Amended Complaint ("FAC"). (ECF No. 34.) As detailed below, the Court grants in part and denies in part Defendants' motion to dismiss.

## I.      FACTS AND PROCEDURAL HISTORY

The Court adopts the following allegations from the FAC. On October 9, 2023, Mr. Villanueva was arrested and transported to CCDC. (ECF No. 31 at ¶ 9.) While at CCDC on October 13, 2023, Mr. Soriano, a corrections officer, directed Mr. Villanueva to dress and escorted him to a different area of CCDC for fingerprinting. (*Id.* at ¶ 12.) Mr. Villanueva alleges that Mr. Soriano was "already visibly upset and agitated," precipitating a verbal exchange. (*Id.* at ¶ 13.) Because of this verbal exchange, Mr. Villanueva informed Mr. Soriano that he would be filing a Citizen Review Board complaint against him. (*Id.* at ¶ 14.) In response, Mr. Soriano directed several increasingly offensive remarks at Mr. Villanueva, which Mr. Villanueva believed was meant to bait him to respond violently. (*Id.*) Mr. Villanueva remained calm. (*Id.*) Mr. Soriano then threatened Mr. Villanueva, saying "I'll show you what happens to little bitches that grieve and complain."

(*Id.*)

When they arrived at the booking area for fingerprints, Mr. Soriano told the other corrections officers that "We have one here, another one that needs 'The Treatment.'" (*Id.* at ¶ 15.) Mr. Villanueva understood that term to mean use-of-force. (*Id.*)

During the return to Mr. Villanueva's module, Mr. Soriano threatened to show him what a bad day was. (*Id.* at ¶ 16.) When they arrived at Mr. Villanueva's module, Mr. Soriano told him he had a "24," which is a punishment that restricts an inmate to his quarters for 24 hours. (*Id.*) When he asked why he was being disciplined, Mr. Soriano replied, "For not following orders." (*Id.*) Mr. Villanueva vehemently denied that he failed to follow orders, and demanded a supervisor so that he could lodge a verbal complaint and ask the supervisor to view the cameras to dispel Mr. Soriano's claim. (*Id.*)

Mr. Soriano immediately grabbed Mr. Villanueva, "threw him against the wall, and then tripped/threw [him] headfirst into the concrete floor in a body-slam type manner." (*Id.* at ¶ 18.) As a result, Mr. Villanueva suffered serious gashes to the eyebrow area and was later taken for medical treatment at a hospital, where he was determined to have sustained orbital bone fractures, as well as vision and concussion symptoms. (*Id.* at ¶ 19.)

Mr. Villanueva filed the instant case on January 18, 2024. (ECF No. 1-1.) His complaint was screened, and he filed the FAC. (ECF Nos. 12; 31.) Defendants then moved to dismiss. (ECF No. 34.) Mr. Villanueva responded (ECF No. 36), and Defendants replied. (ECF No. 40)

## II.      LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007). While Rule 8 does not require "detailed factual allegations," it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To sufficiently allege a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* Similarly, "bare assertions" in a complaint amounting "to nothing more than a 'formulaic recitation of the elements'" of a claim are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 680–81 (quoting *Twombly*, 550 U.S. at 555). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). In accordance with Rule 15(a), the court should freely give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.     DISCUSSION

### A. Fourth Amendment

Mr. Villanueva's first cause of action alleges violations of his federal civil rights under 42 U.S.C. § 1983, and contains references to the First, Fourth, and Eighth Amendments, including a Fourth Amendment excessive force claim. (ECF No. 31 at ¶¶ 20–35.) Defendants argue that any claim for relief under the Fourth Amendment should be dismissed because Mr. Villanueva was a detainee during the events at issue in this case. (ECF No. 34 at 5.)

For excessive force claims, "[t]he status of the detainees determines the appropriate standard for evaluating conditions of confinement." *Vazquez v. Cnty. of Kern,* 949 F.3d 1153, 1163 (9th Cir. 2020) (citation omitted). The protections of the Fourth Amendment apply to "an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Pierce v. Multnomah Cnty., Or.,* 76 F.3d 1032, 1043 (9th Cir. 1996). The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *Graham v. Connor,* 490 U.S. 386, 395 n. 10 (1989). The Eighth Amendment's prohibition against cruel and unusual punishment applies only after conviction and sentencing. *Pierce,* 76 F.3d at 1042.

While it is unclear from the FAC whether Mr. Villanueva was a pretrial detainee or had been convicted[1] by October 13, 2023, there is no dispute that Mr. Villanueva was lawfully in custody at CCDC at the time. Mr. Villanueva also acknowledges, in his response, that the Fourth Amendment is likely not the

---

[1] In Mr. Villanueva's response to the motion to dismiss, he states that he was previously convicted of an offense but had been released on parole and was being detained at CCDC pending further adjudication of an alleged parole violation. (ECF No. 36 at 8–9.) However, Mr. Villanueva's counsel also admits that his exact detention status at the time of these events is unclear, requiring further discovery. (*Id.*)

correct amendment to bring his excessive force claim, but that he referenced the Fourth Amendment out of an abundance of caution. (ECF No. 36 at 8–9.) For these reasons, the Court dismisses Mr. Villanueva's Fourth Amendment claim, but grants leave to amend his first cause of action to seek relief under the Due Process Clause of the Fourteenth Amendment.

### B. Nevada Constitution, Art. I, §§ 6, 18

Mr. Villanueva's second cause of action alleges violations of the Nevada Constitution, including (1) Art. I, Sec. 9; (2) Art. I, Sec. 6; and (3) Art. I, Sec. 18. (ECF No. 31 at ¶¶ 36–54.) Mr. Villanueva argues that use of excessive force "against a person detained and in custody violates Art. I, Sec. 18 or Art I, Sec. 6 of the Nevada Constitution, or both." (*Id.* at ¶ 41.) Defendants seek to dismiss both claims. First, they argue that Art. I, Sec. 18 mirrors the Fourth Amendment, and therefore does not apply to a detainee. (ECF No. 34 at 6–7.) Second, they contend that Art. I, Sec. 6 addresses only excessive bail, which is not at issue in Mr. Villanueva's complaint. (*Id.*)

Defendants' sole argument for dismissal of Art. I, Sec. 6 ignores the full reach of that constitutional provision, which prohibits "excessive bail and fines," "infliction of cruel and unusual punishment," and the unreasonable detention of witnesses. NEV. CONST. art 1, § 6. Because Mr. Villanueva argues that Defendants violated the "cruel and unusual punishment" clause, the Court declines to dismiss his Art. I, Sec. 6 claim for failure to allege excessive bail.

While the Nevada Supreme Court has never addressed[2] what constitutional provision a detainee's excessive force claim arises under, the language of Art. I, Sec. 18 of the Nevada Constitution is identical to that of the Fourth Amendment

---

[2] A federal court interpreting state law is "bound by the decisions of the state's highest court." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (citation omitted). If the state's highest court has not decided the issue, a federal court must predict how that court would decide. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007).

of the U.S. Constitution. Nev. Const. art 1, § 6; U.S. Const. amend. IV. Interpretation of Art. I, Sec. 18 has rarely diverged from that of the Fourth Amendment. *See e.g., Cortes v. State*, 260 P.3d 184, 191 (Nev. 2011); *Mack v. Williams*, 522 P.3d 434, 442 (2022). Mr. Villanueva does not argue that the Nevada Supreme Court would likely find that Art. I, Sec. 18 applies to pretrial detainees or convicted prisoners, and instead seems to concede that Art. I, Sec. 6 is the more appropriate provision. (ECF No. 36 at 9–10.) The Court thus dismisses Mr. Villanueva's claim under Art I, Sec. 6 of the Nevada Constitution.

### C. *Monell* Liability

Mr. Villanueva's third cause of action alleges that LVMPD had a policy or custom of using excessive force for minor offenses by detainees, in violation of *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). (ECF No. 31 at ¶¶ 55–66.) Defendants argue that Mr. Villanueva's allegations are too conclusory to establish *Monell* liability. (ECF No. 34 at 7–12.)

Under *Monell,* a government entity may not be held liable under 42 U.S.C. § 1983, "unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina,* 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell,* 436 U.S. at 694). In particular, a municipal entity "may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive policy or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

To bring a *Monell* claim, Mr. Villanueva must first show an underlying constitutional violation. Mr. Villanueva has alleged excessive force claims that may arise under either the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment, based on whether he was a convicted prisoner or a pretrial detainee at the time.

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7 (1992) (citing *Whitley v. Albers,* 475 U.S. 312, 320–21 (1986)); *see also Simmons v. G. Arnett,* 47 F.4th 927, 932–33 (9th Cir. 2022). When determining whether the force is excessive, the court should look to the "extent of injury," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson,* 503 U.S. at 7 (quoting *Whitley,* 475 U.S. at 321).

"[P]retrial detainees . . . possess greater constitutional rights than prisoners." *Stone v. City of San Francisco,* 968 F.2d 850, 857 n.10 (9th Cir. 1992). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015) (citation and internal quotation marks omitted).

The Court previously allowed Mr. Villanueva's Eighth Amendment excessive force claim to proceed after screening. (ECF No. 12.) Additionally, Defendants do not currently seek dismissal of his excessive force claim. (ECF No. 34.) In the FAC, Mr. Villanueva alleges that he was compliant with Mr. Soriano's orders, but Mr. Soriano was angered by his statement that he would file grievances and make Citizen's Review Board complaints. (ECF No. 31 at ¶¶ 9–19.) Then, without physical provocation, Mr. Soriano grabbed Mr. Villanueva and threw him into the concrete wall, causing severe injuries. (*Id.*) Thus, because Mr. Villanueva has sufficiently alleged that the application of force was wanton and unnecessary and amounted to punishment, he has stated a violation of his constitutional rights.

A policy has been defined as "a deliberate choice to follow a course of action

. . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citations omitted); see also *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). The weight of authority has established that a "policy can be one of action or inaction" within the meaning of *Monell*. *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (citing *Long*, 442 F.3d at 1185). "Both types of claims require that the plaintiff prove a constitutional violation." *Id.* (citing 42 U.S.C. § 1983).

To adequately allege a custom, a plaintiff must allege facts sufficient to show a "longstanding practice or custom that constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted). "The custom must be so 'persistent and widespread' that it constitutes a permanent and well settled city policy." *Id.* (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citations omitted).

Defendants contend that a lone incident cannot be used to show a custom or policy for purposes of *Monell* liability. (ECF No. 34 at 8–9.) But Mr. Villanueva does not rely on an isolated event. He alleges that several LVMPD officers, including Mr. Soriano, shared an understanding of the term "the Treatment," referring to the use of extreme force for even minor offenses. (ECF No. 31 at ¶¶ 15–16, 58–63.) Such allegations plausibly suggest the existence of a well-settled, unwritten custom that predated his injury and was sufficiently widespread to develop a common shorthand.

At the pleading stage, these facts support a reasonable inference that this custom was the moving force behind the violation of Mr. Villanueva's constitutional right to be free from excessive force under the Eighth Amendment

8

or Due Process Clause of the Fourteenth Amendment. Accordingly, Mr. Villanueva has adequately stated a claim for *Monell* liability.

### D. Negligence/Negligence Per Se[3]

Mr. Villanueva's fifth cause of action, for negligence per se, contends that Mr. Soriano owed him a duty under NRS 171.1455 and that Mr. Soriano breached that duty by using excessive force against him. (ECF No. 31 at ¶¶ 77–79.) Defendants argue that NRS 171.1455 cannot create a duty because it does not create or reference a private right of action, and the statute concerns only the use of deadly force during arrests, which is not at issue in this case. (ECF No. 34 at 4.) The Court agrees.

To state a claim for negligence under Nevada law, a plaintiff must allege (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 732 (Nev. 2012) (citations omitted). "[V]iolation of a statute establishes the duty and breach elements of negligence" if a plaintiff can show that a defendant violated a duty imposed upon them by statute, "the injured party belongs to the class of persons that the statute was intended to protect, and the injury is of the *type* against which the statute was intended to protect." *Ashwood v. Clark Cnty.*, 930 P.2d 740, 744 (Nev. 1997) (citing *Sagebrush Ltd. v. Carson City*, 660 P.2d 1013, 1015 (Nev. 1983)).

However, "statutes that do not provide for civil liability cannot form the basis of a negligence per se theory." *Manley v. MGM Resorts Int'l*, No. 2:22-CV-01906-MMD-EJY, 2024 WL 4374059, at *2 (D. Nev. Oct. 2, 2024) (citing *Bell v. Alpha Tau Omega Fraternity, Eta Epsilon Chapter*, 642 P.2d 161, 162 (Nev. 1982); *Hamm v. Carson City Nugget*, 450 P.2d 358, 360 (Nev. 1969); *Hinegardner v.*

---

[3] Mr. Villanueva's last cause of action is entitled "Negligence/Breach of Statute" and premises breach of duty on NRS 171.1455. (ECF No. 31 at ¶¶ 75–82.) The Court construes this cause of action as one for negligence per se.

*Marcor Resorts*, 844 P.2d 800, 803 (Nev. 1992)). NRS 171.1455 sets forth the standards for use of force that police officers must use when effectuating an arrest but does not facially include a private right of action. NRS 171.1455.

"Where a statute does not expressly provide a private right of action, it may nevertheless support an implied right of action if the Legislature intended that a private right of action may be implied." *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 520 P.3d 803, 808 (Nev. 2022) (citing *Neville v. Eighth Judicial Dist. Court*, 406 P.3d 499, 502 (Nev. 2017)). "To determine the Legislature's intent, we consider (1) whether the plaintiffs are of the class for whose special benefit the statute was enacted; (2) whether the legislative history indicates any intention to create or deny a private remedy; and (3) whether implying such a remedy is consistent with the underlying purposes of the legislative scheme." *Id.* (internal quotations and citations omitted).

In analyzing the Nevada Legislature's intent, the Court concludes that NRS 171.1455 does not create an implied private right of action. NRS 171.1455 limits the use of deadly force by police officers when making or attempting an arrest. Such a provision was not enacted to benefit detainees who have already been arrested and transported to a detention center. Furthermore, the minutes of the Senate and Assembly Judiciary Committees' hearings reveal no legislative intent to create a private remedy. Hearing on A.B. 209 Before the Senate Comm. on Judiciary, 67th Leg. (Nev., May 14, 1993); *see also* Hearing on A.B. 209 Before the Assembly Comm. on Judiciary, 67th Leg. (Nev., June 22, 1993); Hearing on A.B. 209 Before the Assembly Comm. on Judiciary, 67th Leg. (Nev., March 3, 1993). Lastly, the purpose of this statute was to adopt the U.S. Supreme Court's holding in *Tennessee v. Garner*, 471 U.S. 1 (1985). *State v. Weddell*, 43 P.3d 987, 990–91 (Nev. 2002). That case found that a Tennessee statute allowing deadly force to prevent the escape of an unarmed fleeing felon violated the Fourth Amendment of the U.S. Constitution. *Garner*, 471 U.S. 1, 11 (1985). A private

remedy for detainees who are not in the process of being arrested is not consistent with the underlying purpose of NRS 171.1455.

Additionally, in *Brooks v. Hubbell*, No. 2:23-CV-00757-JAD-DJA, 2023 WL 6311473, at *3 (D. Nev. Sept. 27, 2023), the Court concluded that NRS 171.1455 does not create a private right of action.

Because NRS 171.1455 does not create an express or implied private right of action, it cannot support a negligence per se theory. Accordingly, the Court grants Defendants' motion to the extent it seeks dismissal of Mr. Villanueva's negligence per se claim.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART consistent with this Order. (ECF No. 34.)

DATED THIS 17th day of February 2026.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE