UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSE VILLANUEVA,

Plaintiff,

v.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,

Defendants.

Case No. 2:24-cv-00125-ART-DJA

ORDER ON ECF Nos. 70, 71, 72

Plaintiff Jose Villanueva sued Defendants Francis Soriano and the Las Vegas Metropolitan Police Department ("LVMPD"), for violations of state and federal law that occurred while he was detained at Clark County Detention Center ("CCDC"). (ECF No. 31.) Plaintiff brings a civil rights claim under 42 U.S.C. § 1983, Nevada constitutional and constitutional torts law claims, and battery and negligence claims. *Id.* Before the Court are three objections (ECF Nos. 70, 71, 72) that Plaintiff has raised in response to Magistrate Judge Albregts' orders on three discovery-related motions (ECF Nos. 44, 43, 32 respectively).

## I. LEGAL STANDARD

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); see also FED. R. CIV. P. 72(a); LR IB 3-1(a). A district court will thus defer to a magistrate judge's non-dispositive order unless it is clearly erroneous or contrary to law. *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). "A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *24-7 Grp. of Companies, Inc. v. Roberts*, No. 3:13-CV-00211-MMD-WGC, 2014 WL 12707232, at *2 (D. Nev. Nov. 21, 2014) (quoting *United States v. Ressam*, 593 F.3d 1095,

1118 (9th Cir. 2010)). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Id.* (quoting *Conant v. McCoffey*, C97–0139, 1998 WL 164946, at *2 (N.D. Cal. Mar. 16, 1998)).

**A. Motion to Compel**

Generally, the "scope of discovery" is information "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A trial court has "broad discretion" in permitting or denying discovery. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). When a party refuses to respond to a discovery request, Federal Rule of Civil Procedure 37(a) permits a party to file a motion to compel a disclosure required under Rule 26 or to compel a discovery response. FED. R. CIV. P. 37(a). A motion to compel must be accompanied by a certification that demonstrates the movant has "in good faith conferred or attempted to confer" with the opposing party. *Id.* The party opposing discovery "bears the burden of showing why that discovery should be not permitted." *TChutima, Inc. v. Abin*, 2026 WL 105966 at *1 (D. Nev. Jan. 13, 2026).

**B. Motion for Protective Order**

Federal Rule of Civil Procedure 26(c) "confer[s] 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). A court may issue a protective order when "good cause" exists to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The party seeking a protective order bears the burden "of showing that specific prejudice or harm will result if no protective order is granted" with respect to each disputed document. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (citing *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)).

## II. Plaintiff's Objection (ECF No. 70) to Order Granting Motion to Compel Expert's ChatGPT History Log Is Granted In Part and Overruled In Part.

### A. Facts and Procedural History

Plaintiff's expert witness, Tom Melton, testified in his October 1, 2025 deposition that he relied upon ChatGPT, an artificial intelligence program, to assist him with researching and drafting his expert report. (ECF No. 44 at 5–6). Prior to the deposition, Plaintiff did not disclose Melton's usage of artificial intelligence in response to Defendant's prior subpoena for "all data, documents, and other information considered by expert witness in forming the expert's opinions." *Id.* at 4–5. Defendants requested Plaintiff's production of the ChatGPT history log after the deposition, to which Plaintiff declined and subsequently designated as protected by "Attorney/Expert Work Product; Trial Preparation: Materials" within their discovery privilege log. (*Id.*; ECF No. 44-9 at 16).

Defendants filed a motion to compel the production of Plaintiff's expert Tom Melton's ChatGPT history log with respect to his preparation of his expert report. (ECF No. 44). Plaintiff opposed this motion (ECF No. 51) and Defendants filed a reply brief in support of the motion (ECF No. 63).

On December 23, 2025, Magistrate Judge Albregts held oral argument on Defendant's motion to compel (ECF No. 44), among other disputed motions. Judge Albregts granted Defendant's motion to compel Melton's ChatGPT history log from the bench, with the transcript of that proceeding (ECF No. 69) serving as the official order (*see* ECF No. 67). Judge Albregts held that the history log should have been disclosed under Federal Rules of Civil Procedure 26(a)(2)(B)(ii) and (iii) "because Melton considered it in forming and supporting his opinions." (ECF No. 69 at 26). He found that the history log was not work product, because it is not a draft report—the log was neither created by Melton nor does the log itself serve as a draft of the entire report. *Id.* Lastly, Judge Albregts found that attorney-client privilege did not protect the ChatGPT log and it should have thus

been disclosed like other materials an expert "would have relied upon in forming his opinion." *Id.* at 27.

Judge Albregts declined to review the 40-page history log *in camera*, instead basing his decision on Plaintiff's characterization of Melton's usage of artificial intelligence as falling into the following categories:

> "(a) Much of the material asks for a case summary of certain controlling court cases on excessive force, in other words legal research conducted by the expert, (b) some inquiries ask ChatGPT to create a deposition outline for an excessive force case, which apparently the expert used to predict likely questions at deposition (classic trial/litigation preparation work), (c) prompts to analyze and create what could be used as portions of a draft report as to certain issues, such as qualifications of the opposing expert or analysis of the opposing expert's report (classic protected draft report information)."

(ECF No. 51 at 4). Plaintiff filed an objection to the order granting production (ECF No. 70) and Defendants filed a response in support of the order (ECF No. 74).

**B. Discussion**

The Court finds that the order granting disclosure of the entirety of Melton's ChatGPT history log was "clearly erroneous or contrary to law." For the reasons stated below, the Court will grant in part and overrule in part Plaintiff's objection.

Generally, a party may seek discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Certain privileges, either absolute or qualified, may protect a party from disclosing relevant information in discovery. Plaintiff invokes both the trial preparation and expert work product privileges as grounds for not disclosing Melton's history log. (ECF No. 51 at 9).

A party or its "representative" may invoke the trial preparation privilege to shield against the discovery of "documents and tangible things that are prepared

in anticipation of litigation or for trial." FED. R. CIV. P. 26(b)(3)(A). Subject to Rule 26(b)(4) and upon a threshold showing of discoverability, "substantial need," and "undue hardship," trial preparation documents may be subject to discovery. *Id.* However, any court-ordered production of trial preparation materials must be structured to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative." FED. R. CIV. P. 26(b)(3)(B).

Expert witnesses may also invoke discovery privileges related to their draft reports. In their expert report, expert witnesses are required to include "the facts or data considered by the witness in forming" their opinion. FED. R. CIV. P. 26(a)(2)(B)(ii). Rule 26(a)(2)(B)(ii) was amended in 2010 to limit disclosures to "facts or data considered," instead of previous language on "data or other information" that was interpreted by many courts as requiring the disclosure of "all attorney-expert communications and draft reports." FED. R. CIV. P. 26 advisory committee's note to 2010 amendment. The rules distinguish between the required disclosure of facts or data considered, and an expert's drafts of their report, which are protected from discovery. "Rules 26(b)(3)(A) and (B) protect drafts of any [expert] report or disclosure required under Rule 26(a)(2)." FED. R. CIV. P. 26(b)(4)(B).

**i. Components of History Log That Must Be Disclosed**

First, the Court will consider which parts of Melton's history log constitute "facts or data" under the meaning of Rule 26(a)(2)(B)(ii) that must be disclosed as part of his expert report. The Ninth Circuit's interpreted Rule 26(a)(2)(B)(ii) and the accompanying advisory committee notes to find that "the requirements

should 'be interpreted broadly' to encompass 'any material considered by the expert, from whatever source, that contains factual ingredients.'" *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 (9th Cir. 2014). The court emphasized that disclosure required facts or data "considered" by the expert in forming their opinions, "'not only those relied upon by the expert.'" *Id.*

The legal case summaries generated by ChatGPT constitute "facts or data" that Melton considered and must be disclosed under Rule 26. This Court finds persuasive the reasoning in *Hirata v. S. Nevada Health Dist.*, 2016 WL 10706085 at *4 (D. Nev. 2016). The *Hirata* court found that an expert's failure to disclose summaries of thousands of pages of deposition materials as "facts and data" considered in creating their report violated Rule 26(a)(2)(B)(ii). *Id.* Even if the summaries were provided by the party calling the expert and the expert "only consulted the summaries as a quick-reference guide, he still considered the summaries within the meaning of Rule 26." *Id.* Plaintiff explains that Melton used the AI software to ask "for a case summary of certain controlling court cases on excessive force." (ECF No. 70). Because Melton generated case summaries and "consulted" them to reach his expert opinion on excessive force, the ChatGPT-generated case summaries constitute "facts or data" that are subject to disclosure under Rule 26. *See also Jackson v. Tesla, Inc.*, 2024 WL 5011620 at *2 (N.D. Cal. 2024) (requiring disclosure of consultant's work and analysis when expert instructed consultant to sort through database and produce data to review for report).

The Court overrules Plaintiff's objection with respect to the production of the ChatGPT history log responses related to case law summaries. Because AI-

generated case summaries are "facts or data," disclosure under Rule 26 requires the disclosure of all case summary responses supplied by ChatGPT. As Defendant correctly contends, the history log is the only place where Defendant can review alleged "hallucinated case citations…quotes…and references to broad legal standards" that Melton relied upon, or at least considered, to reach his opinion. (ECF No. 74 at 2).

**ii. Components of History Log That Are Protected From Disclosure**

The Court finds it was clearly erroneous or contrary to law to order the production of the entirety of Melton's ChatGPT history, because Melton's: 1) questions and prompts to ChatGPT, 2) use of the program to create a deposition outline, and 3) creation of a draft report are all protected from disclosure. The Court grants Plaintiff's objection with respect to these three categories of information.

First, the Court finds that Melton's questions and prompts to ChatGPT are not subject to disclosure. The threshold question is whether questions are "facts and data" considered by Melton that are subject to disclosure under Rule 26(a)(2)(B)(ii). The Court finds that a question is not something that an expert can "consider" or "rely" upon as "facts or data" in reaching their opinion, just as an expert would not "consider" or "rely" upon their online research queries. Next, the Court will determine whether Melton's questions and prompts are protected by any discovery privileges. Whether construed as part of an expert's draft report under Rule 26(b)(4)(B) or trial preparation materials under Rule 26(b)(3)(A), in any case, discovery into Melton's questions to ChatGPT would be impermissible.

Based on the text of Rule 26 and accompanying advisory committee notes, the Ninth Circuit stated that "the driving purpose of the 2010 amendments was to protect opinion work product—i.e., attorney mental impressions, conclusions, opinions, or legal theories—from discovery." *Republic of Ecuador*, 742 F.3d at 870. While Rule 26(b)(3)(A) provides a qualified privilege for an attorney or their representative's trial preparation materials (work product), disclosure cannot include the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B). The Court finds Plaintiff's argument persuasive that Melton's questions and prompts to ChatGPT reveal his "mental impressions or strategy…as to what issues he found of particular importance" and Melton's theory of the case. (ECF No. 70 at 2). Because Melton's questions are not "facts or data" and impermissibly reveal his mental impressions and theories, the Court finds that it was clearly erroneous or contrary to law to order the production of this portion of the log.

It was clearly erroneous or contrary to law to order Plaintiff's production of the portion of the ChatGPT log answers related to Melton's creation of a deposition outline. Plaintiff proffers that Melton used ChatGPT to "create a deposition outline for an excessive force case, which apparently the expert used to predict likely questions at deposition." (ECF No. 51 at 4). Unlike case summaries, articles, or print materials relied upon by an expert to reach their opinion, the Court finds that a deposition outline is not "facts or data" within the meaning of Rule 26. Instead of using ChatGPT's outputs to inform his expert opinion, Melton used ChatGPT's responses to structure his preparation for his deposition and trial.

Plaintiffs should not have to disclose the portion of the history log related to deposition preparation. Some courts have interpreted the trial preparation privilege under Rule 26(b)(3)(A) to extend to expert witnesses. *See Coppola v. Smith*, 2015 WL 1537574 at *6 (E.D. Cal. 2015) ("Expert opinions are protected by the work product doctrine, which extends to litigation consultants and retained experts."). Even assuming that no privileges apply to Melton's creation of a deposition outline on ChatGPT, the Court still finds that production is barred under Rule 26(b)(3)(B). Melton's creation of a deposition outline would impermissibly disclose his "mental impressions, conclusions, opinions, or legal theories," because such an outline would reveal Melton's focus, priorities, or areas of concern to address in the deposition and at trial. *See* FED. R. CIV. P. 26(b)(3)(B).

Lastly, it was clearly erroneous or contrary to law to order Plaintiff's production of the portions of the history log related to Melton's creation of a draft report. The Court finds that Melton's prompts to create a draft report on "certain issues, such as qualifications of the opposing expert or analysis of the opposing expert's report" (ECF No. 70 at 3) is squarely within the protections of an expert's draft reports. Rule 26(b)(4)(B) mandates the protection of expert drafts "regardless of the form in which the draft is recorded." Melton testified to sometimes copying and pasting the outputs of ChatGPT into his own report. (*See* ECF No. 44 at 6). It appears that Melton's usage of the ChatGPT responses was to assist in his writing and analysis of his expert report, rather than to create "facts or data" to consider in forming his opinion. Defendant argues that ChatGPT's responses are not Melton's "own generation of a report," (ECF No. 44 at 12–13), and is therefore

not protected as an expert draft report under Rule 26(b)(4)(B). The Court finds that Melton's creation of a draft report on ChatGPT is protected as a draft report, because Melton testified that some of this information was directly incorporated into his own written report. Even if the ChatGPT output is not a draft report protected under Rule 26(b)(4)(B), it would still be mental impressions protected from disclosure under Rule 26(b)(3)(b). As addressed above, the ChatGPT responses would provide direct insight into Melton's "mental impressions" and "legal theories" that he considered relevant in a report.

Plaintiff raises multiple objections to the production of Melton's entire ChatGPT history log, many of which have been addressed above. The Court notes that Plaintiff also raises an objection that it was clear error for Judge Albregts to not conduct an in camera review of the ChatGPT history log. (ECF No. 74 at 4–5). Having conducted an in camera review of the history log, the Court finds that Judge Albregts did not clearly err in relying upon Plaintiff's good-faith representation of the history logs. *See Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 610 (D. Nev. 2005) ("As has been previously stated in this district, *in camera* review is generally disfavored."). Plaintiff also objects to the extent that there was any finding that privilege was waived by Melton's usage of ChatGPT. (ECF No. 70 at 7). It appears that Judge Albregts did not reach a decision on whether the log was privileged, and if so, if any such privilege was waived by Melton's disclosure of information to ChatGPT. (*See* ECF No. 69 at 22–23). Because ChatGPT is not a person, but was an application used in this instance as a research, drafting, and editing program, the Court finds that any privileged information is not waived by Melton's use of the program. The Court also notes

that many of Defendant's concerns about Melton's methodology and reliance on ChatGPT are appropriate to address at trial as matters of impeachment.

Therefore, the Court grants in part and overrules in part Plaintiff's objection to the production of Melton's ChatGPT log.

## III. Plaintiff's Objection (ECF No. 71) to Order Denying Motion to Compel Responses Regarding Punitive Damages is Overruled.

### A. Facts and Procedural History

The next objection arises from a dispute about Plaintiff's discovery requests seeking Defendant Soriano's financial information for the purpose of punitive damages. Soriano is the individual officer against whom Plaintiff brings their claims. Plaintiff served Soriano with a second set of interrogatories and requests for admission on June 2, 2025, seeking financial information about: sources of income, business interest ownership, real property ownership, property of significant value, financial accounts in Soriano's name, debts and liabilities, substantial gifts of property transfers, investments, financial advisors, state and federal tax returns, recent paystubs, and loan applications, among other data over set periods of time. (*See* ECF No. 43-1, 43-2). Soriano raised objections to each request, "mainly objecting based on precedent recognizing that deferral of punitive damages discovery is appropriate…based on policy interests behind immunity defenses." (ECF No. 48 at 7). The parties were unable to reach agreement on the issue of deferred discovery related to punitive damages. *Id.*

On October 15, 2025, Plaintiff filed a motion to compel Soriano's responses. (ECF No. 43). Defendants jointly opposed the motion and filed a counter-motion for a protective order of Soriano's financial information. (ECF Nos. 48, 49). Plaintiff filed a reply brief in support of their motion (ECF No. 57) and a response brief to Defendants' counter-motion (ECF No. 61). Defendants in turn filed a reply brief in support of their counter-motion. (ECF No. 65).

Judge Albregts considered both motions during the December 23, 2025

oral argument. Ruling from the bench, he denied Plaintiff's motion to compel (ECF No. 43) and granted Defendant's motion for a protective order (ECF No. 49). Judge Albregts found that Ninth Circuit precedent established that discovery into a "defendant's financial condition is relevant to the pursuit of punitive damages." (ECF No. 69 at 15). He balanced the need for Soriano's information against the resolution of qualified immunity defenses, acknowledging that many courts have deferred discovery until dispositive defenses were resolved. *Id.* at 16. Judge Albregts held that it was "clear" that Plaintiff was "entitled" to Soriano's financial information, should the claims survive dispositive motions. *Id.*

Plaintiff filed an objection to the order denying their motion to compel in January 2026 (ECF No. 71), which Defendant opposed (ECF No. 75). Almost two months later, Defendant filed a notice of supplemental authority (ECF No. 81). Plaintiff then filed their own notice of supplemental authority (ECF No. 82), which Defendant filed a response to (ECF No. 83). At the time that Plaintiff filed their three objections, the Court had not yet ruled on Defendants' motion to dismiss (ECF No. 34). The Court granted in part and denied in part the motion to dismiss in February 2026 (ECF No. 76). In July 2026, Defendants Soriano (ECF No. 95) and LVMPD (ECF No. 96) filed respective motions for summary judgment that remain pending before the Court.

**B. Discussion**

Under the "clearly erroneous or contrary to law" standard, the Court agrees with Judge Albregts' order (ECF No. 69) denying Plaintiff's motion to compel Defendant Soriano's discovery responses related to punitive damages (ECF No. 43). Judge Albregts held that discovery into punitive damages could proceed after dispositive motions addressing qualified immunity were resolved. (ECF No. 69). Defendants have met their burden showing that discovery should not be

permitted at this stage of litigation.

Judge Albregts did not commit a clear error or issue an order contrary to law in structuring the discovery of punitive damages after dispositive motions on qualified immunity were resolved. The Supreme Court and courts within the Ninth Circuit have held that such flexibility is permissible within the Federal Rules of Civil Procedure. Because the court has discretion in setting the "timing and sequence of discovery," it may order that the "threshold question" of qualified immunity be resolved before permitting discovery. *See Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Within the context of actions brought under 42 U.S.C. § 1983, Judge Albregts found that some courts have "delayed discovery into a defendant's financial condition…pending resolution of a qualified immunity claim." (ECF No. 69 at 16) (citing *Klein v. City of Beverly Hills*, 2015 WL 13906841 (C.D. Cal. 2015) (collecting cases)). This Court agrees that it is within the court's discretion to delay discovery until the qualified immunity issues are fully adjudicated.

Plaintiff raises several arguments in support of their objection to Judge Albregts' order. Plaintiff argues that staying discovery will prevent follow-up discovery on punitive damages until after the discovery period ends, in addition to either delaying trial or prejudicing Plaintiff with a short runway to trial. (ECF No. 71 at 4). Plaintiff emphasizes that courts have consistently found that discovery into a defendant's financial status is relevant to a claim asserting punitive damages, and that a majority of courts do not stay discovery of punitive damages pending resolution of dispositive motions. *Id.* at 5. Additionally, Plaintiffs distinguish caselaw permitting stays of discovery in cases bringing

§ 1983 actions from this case, because Plaintiff's state constitutional and constitutional tort claims will survive Defendants' arguments on federal qualified immunity defenses. *Id.* at 6. Plaintiff also questioned the appropriateness of the order, given that at the time it was issued, Defendants had not filed any dispositive motions related to qualified immunity defenses. *Id.* at 7.

Plaintiff's objections do not rise to the level of clear error or a decision contrary to law. As discussed above and acknowledged by Plaintiff, the Court has discretion in structuring discovery and "there is a line of cases finding that in civil rights cases where qualified immunity might be asserted the discovery can be stayed." (ECF No. 71 at 6). Even if a "majority" of courts, as Plaintiff contends, permit discovery into a defendant's financial conditions after punitive damages have been pled, an order that stays discovery is consistent with binding precedent and not clearly erroneous or contrary to law. Judge Albregts noted that the financial information is "relevant" and Plaintiff is indeed "entitled" to the information should their claims survive the dispositive motions. (ECF No. 69 at 15–16). Simply put, Judge Albregts considered the discovery request "premature." *Id.* at 21. Even if Plaintiff is successful in their state constitutional and constitutional torts claims, they are not precluded from ever accessing this information. Judge Albregts weighed the harm of delay to the scheduled trial date and parties' future good-faith efforts to cooperate in providing the information regarding punitive damages. *Id.* at 18–21. Since this order has been issued, judgment has been granted on a motion to dismiss (ECF No. 76) and motions for summary judgment (ECF Nos. 95. 96) have been filed. Because the order did not deny all discovery into punitive damages but instead shifted the window of time

in which Plaintiff could seek this information, the Court finds that Plaintiff's objections fail.

Plaintiff's arguments ultimately hinge on policy disagreements that the order "will only favor defendants and will always work against plaintiffs" (ECF No. 71 at 7) than legal objections. The Court thus overrules Plaintiff's objection (ECF No. 71) to the order denying Plaintiff's motion to compel.

## IV. Plaintiff's Objection (ECF No. 72) to Order Denying Protective Order on Requests for Admission is Overruled.

### A. Facts and Procedural History

Defendant LVMPD served 49 requests for admission on Plaintiff and Defendant Soriano served 82 requests for admission on Plaintiff. (ECF No. 32 at 2). Plaintiff requested that Defendants withdraw the 131 total requests as improper and harassing. *Id.* After correspondence and attempts at a meet-and-confer, the parties were unable to reach an agreement. (ECF No. 33 at 5–6). Plaintiff then filed a motion for a protective order, seeking for all 131 requests for admission to be "stricken entirely." (ECF No. 32 at 14). Defendant objected to this protective order (ECF No. 33) and Plaintiff filed a reply in support of the order (ECF No. 35).

On December 23, 2025, Judge Albregts heard oral argument on Plaintiff's motion for a protective order. His ruling from the bench denied the motion (ECF No. 69). Judge Albregts held that Plaintiff "cannot dictate how [Defendant] conduct[s] discovery" and that it was permissible for the requests for admission to go to "the ultimate factual and legal issues." *Id.* at 8. While Judge Albregts called into question how many of the requests were necessary, he did not "find that as a whole they were all improper" and emphasized the "leeway" parties have in structuring their discovery. *Id.* at 10. Judge Albregts held that the sheer number of requests for admission was not a justification for holding that the

entirety of the requests were improper. *Id.* Additionally, he ordered that Plaintiff file individualized objections or responses to each request for admission, because Plaintiff previously raised a "blanket response" to each request. *Id.*

Plaintiff objected to Judge Albregts' denial of their protective order (ECF No. 72) and Defendant responded in support of the denial (ECF No. 73).

**B. Discussion**

The Court overrules Plaintiff's objection (ECF No. 72) to Judge Albregts' order (ECF No. 69) denying Plaintiff's motion for a protective order over its responses to Defendants' requests for admission (ECF No. 32) under the "clear error" or "contrary to law" standard. Plaintiff failed to meet their burden "of showing that specific prejudice or harm will result if no protective order is granted" with respect to each disputed document. *Foltz*, 331 F.3d at 1130.

Plaintiff raises multiple arguments in support of their objection to the order denying their motion for a protective order, which the Court will address in turn. First, Plaintiff contends that the "sheer number" of the total 131 requests for admission is evidence that the discovery is excessive or harassing. (ECF No. 72 at 3–4). Plaintiff also argues that the requests for admission are impermissibly disguised interrogatories that are barred under the Federal Rules of Civil Procedure, because requests for admission (unlike interrogatories) should not go to disputed or material facts or legal issues. *Id.* at 4–5. Plaintiff claims that Judge Albregts committed clear error when disregarding Nevada state case law on the proper scope of requests for admission, because "there is no substantive difference between the Nevada and Federal rules of civil procedure on this point of law." *Id.* at 8. As a result, Plaintiff argues that Defendants have exceeded the

set limit on the number of total interrogatories a party can issue, and the order is thus in clear error. *Id.* at 4–5. Lastly, Plaintiff claims that Judge Albregts committed clear error in requiring Plaintiff to submit individualized objections or responses to each request for admission. *Id.* at 8. Plaintiff contends that their blanket objection was appropriate, because they objected to "all" 131 requests and compliance with this order would have required Plaintiff to exceed the local rules' page limitation in copying 28 pages of requests for judicial review. *Id.*

Judge Albregts' order was not clearly erroneous or contrary to law in declining to find that the total amount of requests for admission is abusive. Judge Albregts correctly noted that the Federal Rules of Civil Procedure do not impose a limit on the number of requests for admission a party can issue. (ECF No. 69 at 7). Requests for admission stand in contrast to interrogatories, which are subject to a numerical threshold. *See* FED. R. CIV. P. 33. Courts do "not readily grant protective orders against an entire set of discovery requests on the grounds that the number of requests is excessive." *Jones v. Skolnik*, 2014 WL 2625000 at *2 (D. Nev. June 12, 2014). This Court, like Judge Albregts, finds Plaintiff's argument for relief on the basis of sheer quantity to be uncompelling.

The Court finds that the denial of the protective order was not clearly erroneous or contrary to law by, as Plaintiff contends, permitting disguised, impermissible interrogatories beyond the scope of requests for admission. As an initial matter, the Court agrees with Judge Albregts that cases invoking Nevada rules of civil procedure are inapplicable to this case. (*See* ECF No. 69 at 7). The Federal Rules of Civil Procedure are binding upon this Court, *see* FED. R. CIV. P 1, not Nevada state rules of civil procedure. *See Shady Grove Orthopedic Assocs.*

*v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *Hanna v. Plumer*, 380 U.S. 460 (1965). To the extent that Petitioner relies upon cases interpreting state rules of civil procedure, they are not binding upon the court.

Plaintiff could not provide binding authority that cabins requests for admission so narrowly as to exclude all material or disputed facts or legal issues. Judge Albregts acknowledged that the proper scope of such requests is to "facilitate proof with respect to issues that cannot be eliminated from the case and, second, to narrow the issues by eliminating those that can be." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007). However, both the Federal Rules of Civil Procedure and precedent foreclose Plaintiff's expansive argument. As Judge Albregts noted, the federal rules permit requests for admission relating to "facts, the application of law to fact, or opinions about either." FED. R. CIV. P. 36(a)(1)(A). Commentary to Rule 36 explains that when requests go to matters "in dispute," the appropriate response is for a party to answer the request, because the "very purpose of the request" is to determine a party's stance towards admitting an issue or presenting it as a "genuine issue for trial." FED. R. CIV. P. 36 advisory committee's note to 1970 amendment. Judge Albregts was correct that a request for admission could be permissible, even if it "relates to an ultimate fact or could prove dispositive of the entire case." (ECF No. 69 at 8). Requests for admission that go to "'the heart of the litigation'" are still permissible. *See Wells v. Glob. Tech Indus., Inc.*, 2022 WL 4626014 at *2 (D. Nev. Sept. 30, 2022).

Lastly, it was not clearly erroneous or contrary to law for Judge Albregts to order Plaintiff to file individualized objections or responses to each request for admission. Indeed, the local rules require parties filing a motion for a protective

order to "set forth in full the text of the discovery originally sought and any response to it." D. Nev. R. 26-6(b). Plaintiff was required to file their individualized objections for both the Court and Defendant to review.

## V. CONCLUSION

IT IS THEREFORE ORDERED THAT Plaintiff's objection (ECF No. 70) is granted in part and overruled in part.

IT IS THEREFORE ORDERED THAT Plaintiff's objections (ECF Nos. 71, 72) are overruled.

DATED THIS 29th day of September 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE